UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ELOIS HANKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:08-CV-1594-G |
| ERIC K. SHINSEKI, Secretary of the | ) | |
| Veterans Affairs, ET AL., | ) | **ECF** |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendants, the Department of Veteran

Affairs and Erik Shinseki, Secretary of Veteran Affairs (collectively, "the VA" or "the

defendants"), to dismiss the plaintiff's claims pursuant to Federal Rule of Civil

Procedure 12(b)(6).  For the reasons set forth below, the motion to dismiss is granted

in part and denied in part.

## I.  BACKGROUND

The plaintiff, Elois Hanks ("Hanks"), is a sixty-two year old African American

woman who worked for the defendants as a nurse.  First Amended Complaint

("Complaint") ¶ 7.  Hanks claims that the defendants constructively discharged her on November 13, 2006.  *Id.*  Prior to that date, she had worked for the defendants for twenty seven years and eleven months.  *Id.*  During her final year of employment, Hanks reported to Donna Dew ("Dew").  *Id.* ¶ 8.  Hanks alleges that her relationship with Dew was strained from the beginning.  See *id.* ¶¶ 8-9.  When Hanks and Dew first met, Hanks inquired whether Dew was a registered nurse, or a licensed vocational nurse.  *Id.* ¶ 9.  Dew responded that she felt the question was insulting.  *Id.* According to Hanks, her relationship with Dew deteriorated after that first encounter. *Id.* ¶¶ 9-10.  Specifically, Hanks alleges that Dew began to discriminate against her on the basis of race, age, and disability.  See *id.* ¶¶ 8-9.  In support of her claim that Dew discriminated against her on the basis of race, Hanks notes that Dew referred to herself as a "redneck" -- a term which Hanks interpreted as "racially charged and racially offensive."  *Id.*  ¶ 12.  Hanks also contends that Dew retaliated against her for complaining of the allegedly unlawful employment practices.  *Id.* ¶ 8.

Hanks' complaint points to several specific actions taken against her that she believes were discriminatory.  First, she asserts that Dew unfairly rated her as "in need of improvement" on her performance evaluation.  *Id.* ¶ 10.  Subsequently, Dew placed Hanks on probation, "questioned [her] competency and instructed other employees not to assist [her] in any manner regarding her work load, including any questions Plaintiff might have."  *Id.*  The plaintiff also asserts that Dew altered Hanks' work

duties and posted a bulletin which stated that Hanks' position was vacant.  *Id.* ¶ 12.

When Hanks complained of these actions and filed claims of discrimination against

Dew, Dew began to increase Hanks' work load in a way that exacerbated Hanks'

disabilities in her back and right arm.  *Id.* ¶ 11.

In addition, a supervisor who worked closely with Dew refused to allow Hanks

to keep two desk chairs that she had in her office.  *Id.* ¶ 13.  Hanks kept two chairs in

her office to ease the pain in her back and right arm.  *Id.*  One chair allowed Hanks to

roll, another provided support for her back.  *Id.*  When Hanks "tried to explain why

she needed the benefit of both chairs, she was written up for insubordination."  *Id.*

Sometime later, Hanks claims, she was forced to resign.  *Id.* ¶ 7.  The defendants

allegedly told her that if she failed to resign, the VA would file a report with the

board of nursing examiners.  *Id.*  ¶ 13.  Hanks chose to resign.  She made this

decision, at least in part, because her retirement benefits would have been adversely

impacted if she had been terminated.  *Id.*

Hanks believes that the defendants, acting mainly through Dew, took these

actions against her as a result of her race, age, disability, and her complaints against

Dew.  The defendants now seek to dismiss Hanks' claims, arguing that she has failed

to state a claim upon which relief can be granted.  Motion to Dismiss First Amended

Complaint with Memorandum Brief ("Motion") at 1.

## II. ANALYSIS

### A. The Rule 12(b)(6) Standard

The defendants move to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(6). "To survive a Rule 12(b)(6) motion, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974 (2007)), *cert. denied*, __ U.S. __, 128 S.Ct. 1230 (2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S.Ct. at 1964-65 (citations, quotation marks, and brackets omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 127 S.Ct. at 1965). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* (internal quotation marks omitted) (quoting *Martin K. Eby Construction Company v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). Even so, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v.*

- 4 -

*Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (May 18, 2009).  In other words,
"[t]hreadbare recitals of the elements of a cause of action, supported by mere
conclusory statements, do not suffice."  *Id.*  "[W]here the well-pleaded facts do not
permit the court to infer more than the mere possibility of misconduct, the complaint
has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'"  *Id.* at
1950 (quoting FED. RULE CIV. PROC. 8(a)(2).

B.  Race Discrimination Claims

1.  *The Title VII Claim*

Hanks alleges that the VA violated her rights under 42 U.S.C. § 1981 and 42
U.S.C. § 2000e-2(a) ("Title VII").  Complaint  ¶¶ 15-21.  The court will first discuss
Hanks' Title VII claim.  In order to state a claim for race discrimination under Title
VII, Hanks must show that she "(1) is a member of a protected class; (2) was
qualified for her position; (3) was subject to an adverse employment action; and
(4) was replaced by someone outside the protected class, or, in the case of disparate
treatment, shows 'that others similarly situated were treated more favorably.'"  *Okoye
v. University of Texas Houston Health Science Center*, 245 F.3d 507, 512-13 (5th Cir.
2001) (quoting *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir.
1999)).

Hanks, as an African American, is within a protected class for purposes of race
discrimination.  She has also pleaded that she worked for the defendants for over 27

- 5 -

years, which, when viewed in the light most favorable to the plaintiff, establishes that she was qualified for her position.  Complaint ¶ 7.  Regarding the third element, Hanks has pleaded facts sufficient to show that she was constructively discharged, which, under Fifth Circuit law, satisfies the adverse employment action requirement. *Brown v. Bunge Corporation*, 207 F.3d 776, 782 (5th Cir. 2000).  "A constructive discharge occurs when the employer makes working conditions so intolerable that a reasonable employee would feel compelled to resign."  *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007) (quoting *Hunt v. Rapides Healthcare System, LLC*, 277 F.3d 757, 771 (5th Cir. 2001)).  "In determining whether an employer's actions constitute a constructive discharge, we examine the following relevant factors: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer were accepted or not."  *McCoy*, 492 F.3d at 557.

Hanks does not plead that any of these six factors were present.  She does, however, plead that the VA threatened to take away "a substantial portion of her retirement" if she refused to resign.  Complaint ¶ 28.  Under these conditions, a reasonable employee could feel compelled to resign.  Thus, Hanks has pleaded facts sufficient to satisfy the third element, as well.  *McCoy*, 492 F.3d at 557.

- 6 -

She has not, however, pleaded facts sufficient to satisfy the fourth element. Hanks includes only the following sentence in support of the fourth element: "Defendant . . . classified Plaintiff in a manner that deprived her of an equal employment opportunity that was provided to employees similarly situated in violation of 42 U.S.C. Section 2000e (2)(a) and 42 U.S.C. Section 1981." Complaint ¶ 19.  This statement does not state who the other similarly situated employees were or what opportunities they were given that Hanks was denied.  It is not even clear from this statement that the similarly situated employees who allegedly received "an equal employment opportunity" were outside the protected class.  In short, Hanks' statement is nothing more than a "[t]hreadbare recital", in the words of *Iqbal*, 129 S.Ct. at 1949, of the fourth element.  Although Hanks' complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S.Ct. at 1964-65 (citations, quotation marks, and brackets omitted).  Here, Hanks offers nothing in support of the fourth element other than her bald assertion that other unidentified employees received an "equal employment opportunity" that she did not.  The motion to dismiss Hanks' Title VII claim pursuant to Rule 12(b)(6) is therefore granted.

2. *The 42 U.S.C. § 1981 Claim*

Hanks also maintains that the defendants violated her rights under 42 U.S.C. § 1981.  The elements of a claim under § 1981 are:  "(1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerns one or more of the activities enumerated in the statute."  *Felton v. Polles*, 315 F.3d 470, 483 (5th Cir. 2002) (quoting *Green v. State Bar of Texas*, 27 F.3d 1083, 1086 (5th Cir. 1994)), abrogated on other grounds by *Burlington North & Santa Fe Railway Company v. White*, 548 U.S. 52 (2006).  The first element is easily satisfied; Hanks' race as an African American qualifies her as a racial minority.  Regarding the second element, "[b]ecause it is often difficult for a plaintiff to provide direct evidence of discriminatory intent, the Supreme Court has created a burden-shifting structure for analyzing such claims, *i.e.*, the *McDonnell Douglas* framework."  *Matthews v. International House of Pancakes, Inc.*, 597 F.Supp.2d 663, 675 (E.D. La. 2009) (citing *McDonnell Douglas v. Green*, 411 U.S. 792 (1973)).  According to this framework, the plaintiff must demonstrate that "(1) . . . she is a member of a protected class; (2) . . . she was otherwise qualified for the position; (3) . . . she suffered an adverse employment action; and (4) the action took place under conditions establishing an inference of discrimination."  *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802).  These first three elements are identical to the first three elements

- 8 -

of a Title VII claim.  Thus, for the same reasons discussed above, Hanks has pleaded facts which, if taken as true, satisfy these first three elements.

Here again, however, Hanks has pleaded no facts in support of the fourth element.  There are no facts included in her complaint that give rise to an inference of discrimination.  Hanks pleads only a long list of actions that were allegedly taken against her, and the fact that she is African American.  *See* Complaint ¶¶ 7, 10-21. The only allegation that her employer even acknowledged anyone's race in the workplace is that Dew referred to herself as a "redneck."  *Id.* ¶ 12.  Dew's use of this term does not give rise to an inference that any actions taken against Hanks were based on Hanks' race.  According to the plaintiff, no comments about Hanks' race were ever made.  Further, Hanks herself offers up a non-discriminatory reason for any adverse employment actions Dew took against her: Hanks asked Dew a question on the first day they met that Dew viewed as insulting.  Complaint ¶ 9.  She believed that their relationship "deteriorated after that first encounter."  *Id.*  In light of this non-discriminatory explanation for any adverse actions Dew took against Hanks, and the complete lack of any averment suggesting discrimination, the court concludes the facts do not give rise to an inference of racial discrimination.  The motion to dismiss Hanks' § 1981 claim is also granted.

## C.   The Americans with Disabilities Act Claim

The defendants next seek to dismiss Hanks' claim for a violation of the

Americans with Disabilities Act ("the ADA").  The ADA states that "[n]o covered

entity shall discriminate against a qualified individual on the basis of disability."  42

U.S.C. § 12112(a).  The definition of a "covered entity" is "an employer,

employment agency, labor organization, or joint labor-management committee."  42

U.S.C. § 12111(2).  The definition of "employer" specifically excludes the United

States or any corporation owned by the government of the United States.  42 U.S.C.

§ 12111(5)(B)(i).  The defendants are part of the United States government.  38

U.S.C. § 301(a) ("The Department of Veterans Affairs is an executive department of

the United States.").  Thus, whether Hanks can establish a *prima facie* disability

discrimination case under the ADA is irrelevant.  See *Henrickson v. Potter*, 327 F.3d

444, 447 (5th Cir.) (holding that the ADA does not allow plaintiffs to file suit against

the Postmaster General because the statute's definition of employer expressly

excludes the United States), *cert. denied*, 540 U.S. 1018 (2003).  Hanks may not bring

an ADA claim against the defendants.  The defendants' motion to dismiss Hanks'

ADA claim is therefore granted.

## D.   The Age Discrimination Claim

Hanks next claims that the VA discriminated against her on the basis of age.

Complaint ¶ 25.  In particular, Hanks complains that the defendants violated her

rights under 29 U.S.C. § 621, the Age Discrimination in Employment Act ("the

ADEA").  *Id.*  To establish a *prima facie* claim under the ADEA, Hanks must show that

"(1) [s]he was discharged; (2) [s]he was qualified for the position; (3) [s]he was

within the protected class; and (4) [s]he was either (i) replaced by someone outside

the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged

because of [her] age." *Armendariz v. Pinkerton Tobacco Company*, 58 F.3d 144, 149 (5th

Cir. 1995), *cert. denied*, 516 U.S. 1047 (1996).

    As discussed above, Hanks has pleaded facts sufficient to show that she was

constructively discharged.  A plaintiff who resigns can satisfy the discharge

requirement of a discrimination claim by proving constructive discharge.  *Faruki v.*

*Parsons S.I.P., Inc.*, 123 F.3d 315, 319 (5th Cir. 1997).  Thus, she has satisfied the

first element for the purposes of Rule 12(b)(6).  She has also pleaded that she held

her position for over 27 years prior to her constructive discharge in 2006.  This fact,

when viewed in the light most favorable to Hanks, establishes that she was qualified

for the position, satisfying the second element.  She also satisfies the third element.

She pleads that she was sixty two at the time of the discharge, well within the

protected class for purposes of the ADEA.  29 U.S.C. § 631(a) ("The prohibitions in

this chapter shall be limited to individuals who are at least 40 years of age.").  She has

not, however, pleaded any facts in support of the fourth element.  Hanks includes

only one sentence in support of the fourth element:  "The Defendant, by and through

Defendant's agents, intentionally engaged in unlawful employment practices involving Plaintiff because of her age." Complaint ¶ 25. This statement does not assert *why* Hanks believes the actions allegedly taken against her related to her age. It is nothing more than a "[t]hreadbare recital of the elements." *Iqbal*, 129 S.Ct. at 1949. Hanks does not include any fact that suggests a link between her age and the adverse employment actions taken against her. She must plead more than just her age to state a claim under the ADEA. The motion to dismiss Hanks' ADEA claim is consequently granted.

## E.  Constructive Discharge

Hanks next claims that the VA constructively discharged her. Complaint ¶ 28. A constructive discharge claim, however, "is not in itself a separate cause of action." *Bryant v. Skyline Properties, Inc.*, 2006 WL 708647, *2 (N.D. Tex. Mar. 20, 2006) (Fish, C.J.); *Turman v. Greenville Independent School District*, 2004 WL 350683, *2 (N.D. Tex. Jan. 27, 2004) (holding that the "[p]laintiff's claim of constructive discharge does not state a separate cause of action"). Thus, the VA's motion to dismiss Hanks' constructive discharge claim is granted.

## F.  Retaliation

Hanks also alleges that the defendants retaliated against her after she filed a complaint with the EEOC. Complaint ¶ 27. To show that the defendants retaliated against her in violation of Title VII, Hanks must show that (1) she engaged in activity

protected by Title VII; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse employment action.  See *Gee v. Principi*, 289 F. 3d 342, 345 (5th Cir. 2002).  Hanks has pleaded facts that satisfy the first element; filing a claim with the EEOC is a protected activity.  *Allen v. Texas Department of Transportation*, 186 Fed. Appx. 501, 502 (5th Cir. 2006).

As discussed above, the facts alleged in the complaint also satisfy the second element.  According to Hanks, the VA constructively discharged her.  A constructive discharge may satisfy the adverse employment action requirement.  *Brown*, 207 F.3d at 782.  Thus, Hanks' complaint alleges facts that, when taken as true, satisfy the second element of a retaliation claim.

The final element requires Hanks to plead facts that could show a "causal link" between her filing a charge with the EEOC and the constructive discharge.  The Fifth Circuit has held that if the protected act and the adverse employment action are close enough in time, this temporal proximity satisfies the causal link requirement.  *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) (finding that "a time lapse of up to four months has been found sufficient to satisfy the causal connection for summary judgment purposes") (internal citations omitted).  Hanks filed two complaints with the EEOC, one in December of 2005, a second in November of 2006.  Hanks alleges that the defendants constructively discharged her on November 13, 2006.  Complaint ¶ 7.  Viewing all facts in the light most favorable to

the plaintiff, the court infers that Hanks is referring to the complaint she filed in

November of 2006, and that she filed this second complaint with the EEOC before

she resigned on November 13, 2006.  If so, the temporal proximity between that

complaint and the constructive discharge is close enough to establish a "causal link"

at this stage of the case.  Thus, Hanks has pleaded sufficient facts to state a claim of

retaliation under Title VII.  The motion to dismiss her retaliation claim is accordingly

denied.

## III.  CONCLUSION

For the reasons discussed above, Hanks' Title VII claim, 42 U.S.C. § 1981

claim, and ADEA claim are **DISMISSED** pursuant to Rule 12(b)(6) without

prejudice to filing, within twenty days of this date, a more specific amended

complaint asserting those claims.  Her ADA and constructive discharge claims are

**DISMISSED** with prejudice.  The motion to dismiss plaintiff's retaliation claim is

**DENIED**.

**SO ORDERED**.

July 9, 2009.

_A. Joe Fish_____

A. JOE FISH
**Senior United States District Judge**