UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION


ELOIS HANKS,                          )
                                      )
          Plaintiff,                  )
                                      )        CIVIL ACTION NO.
VS.                                   )
                                      )        3:08-CV-1594-G
ERIC K. SHINSEKI, Secretary of the    )
Veterans Affairs, ET AL.,             )        **ECF**
                                      )
          Defendants.                 )


## MEMORANDUM OPINION AND ORDER

Before the court are the motions of the plaintiff Elois Hanks ("Hanks") to

strike the defendants' motion for summary judgment, brief, and appendix in support

thereof ("Motion to Strike") (docket entry 24) and the motion of the defendants Eric

K. Shinseki, et al. ("the defendants") for summary judgment ("Motion for Summary

Judgment") (docket entry 19). For the reasons stated below, Hanks's motion to

strike is denied, and the defendants' motion for summary judgment is granted.

# I. <u>BACKGROUND</u>

## A. <u>Factual Background</u>

This is an action under the anti-retaliation provision of Title VII of the Civil

Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*[1]  Hanks is a registered nurse who was

employed by the Department of Veterans Affairs ("the VA") from November 1978

until November 13, 2006, when her employment there was terminated.[2]  From

July 2005 until the time she was terminated, Hanks was supervised by a woman

---

[1]    *See* Plaintiff, Elois Hanks' Second Amended Complaint and Jury Demand ("Complaint") (docket entry 11) ¶ 4.

[2]    *See* Supplemental Investigative Report in the Matter of the EEO Complaint of Discrimination of Elois Hanks ("Supplemental Report") at 3-4, 8-9, *located in* Plaintiff's Appendix in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Appendix") at 004-007; Oral Deposition of Elois Hanks ("Hanks Deposition") at 7, *located in* Plaintiff's Appendix at 082.  As discussed below, see *infra* notes 19-25 and accompanying text, Hanks was never actually terminated by the VA.  She chose to retire instead of being terminated because she believed that doing so would help preserve her retirement benefits.  But it is undisputed that the VA had decided to terminate Hanks's employment and would have done so had she not retired.  An employee who has been told that her employment is going to be terminated and chooses to resign instead of being terminated can claim she was constructively discharged.  See *Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 319 (5th Cir. 1997) (noting that an "employee can prove constructive discharge by showing that she faced [a] choice between resigning or being fired") (citation omitted).  And in the Title VII context, a constructive discharge is legally equivalent to a termination.  See *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004) ("Constructive discharge occurs when an employee has quit her job under circumstances that are treated as an involuntary termination of employment."); see also *Pennsylvania State Police v. Suders*, 542 U.S. 129, 148 (2004) ("[A] constructive discharge is functionally the same as an actual termination . . . .").  Therefore, for ease of reference, this memorandum opinion describes Hanks's separation from her employment at the VA as a termination.

named Donna Dew ("Dew").[3]  Shortly after Dew became Hanks's supervisor in July 2005, Dew assigned some new duties to Hanks that had previously been performed by employees who were not registered nurses.[4]  Hanks believed that Dew's decision to assign her these new duties was a form of discrimination on the basis of race, age, and disability.[5]  On November 1 and 2, 2005, Hanks sent two e-mails complaining about Dew's conduct.[6]  On November 3, 2005, Hanks contacted an equal employment opportunity ("EEO") counselor within the VA to discuss the possibility of filing a formal discrimination complaint against Dew.[7]  Hanks received permission to file a formal discrimination complaint, and she did so on December 18, 2005.[8]  The EEO complaint asserted that Hanks had been discriminated against on the basis of age,

---

[3]     *See* Written Affidavit of Donna S. Dew in the Matter of the EEO Complaint of Discrimination of Elois Hanks ("Dew Written Affidavit") at 2, *located in* Plaintiff's Appendix at 073.

[4]     Dew Written Affidavit at 2, *located in* Plaintiff's Appendix at 073; Investigative Report in the Matter of the EEO Complaint of Discrimination of Elois Hanks ("Initial Report") at 2, *located in* Plaintiff's Appendix at 055.

[5]     Initial Report at 2-3, *located in* Plaintiff's Appendix at 055-056.

[6]     *See* E-mail of Elois Hanks of November 1, 2005, *located in* Plaintiff's Appendix at 044; E-mail of Elois Hanks of November 2, 2005, *located in* Plaintiff's Appendix at 046.

[7]     Letter of Robyn Labombarda to Richard Shaw of February 6, 2006, at 1, *located in* Plaintiff's Appendix at 058.

[8]     *Id.*

- 3 -

race, and disability when she was assigned her new duties.[9] The Office of Resolution

Management ("ORM"), the department within the VA that handles EEO complaints,

began investigating Hanks's allegations in May 2006.[10] During the course of this

investigation, Dew provided an affidavit about Hanks's allegations of discrimination

and participated in an interview with an EEO investigator in which she denied those

allegations.[11] The ORM's investigation of Hanks's EEO complaint concluded in July

2006.[12] In August 2006, Hanks elected to have a hearing on her EEO complaint

through the EEOC.[13]

The events that immediately precipitated Hanks's termination from the VA

took place in September 2006. The first occurred on September 18, 2006. Up until

that day, Hanks had two chairs in the cubicle where she worked.[14] That day, one of

---

[9]     Initial Report at 2, *located in* Plaintiff's Appendix at 055. An EEO
complaint is a discrimination complaint that a government employee files with the
government agency where he or she is employed. *See generally* 29 C.F.R. § 1614.106.
The agency must take a final action on the complaint before the employee can take
an appeal to the Equal Employment Opportunity Commission ("EEOC") or file a
civil action in a federal district court. *See* 29 C.F.R. § 1614.110.

[10]     Letter of Charlotte A. Jones to Richard Shaw of May 24, 2006, at 1,
*located in* Plaintiff's Appendix at 069.

[11]     *See* Dew Written Affidavit at 1-2, 7, *located in* Plaintiff's Appendix at
072-074; Report of Contact at 1, *located in* Plaintiff's Appendix at 075.

[12]     Supplemental Report at 1, *located in* Plaintiff's Appendix at 002.

[13]     *Id.*

[14]     *Id.* at 3, *located in* Plaintiff's Appendix at 004.

Hanks's coworkers removed one of the chairs from Hanks's cubicle, and an incident ensued involving Hanks, her coworker, and Dew.[15]  According to evidence in Hanks's appendix, four people who witnessed the incident "corroborate the claim that [Hanks] became disruptive and was 'yelling and waiving [sic] her hands in a threatening manner.'"[16]  The second event occurred on September 19, 2006.  That day, a chair was in the middle of the hallway outside of Hanks's cubicle; Dew asked Hanks who had placed the chair there.[17]  According to evidence in Hanks's appendix, "when [Hanks] was questioned about the chair, [Hanks] began yelling loudly.'"[18]  Following these two incidents, Dew sent a proposal for removal to Sandra Brock, acting chief of the VA's fiscal service, requesting that Hanks's employment with the VA be terminated.[19]  On October 5, 2006, the VA issued a letter of proposed discharge to Hanks.[20]  The letter proposed to terminate Hanks's employment with

---

[15]     *Id.*

[16]     *Id.* at 8, *located in* Plaintiff's Appendix at 006; *see also* Reports of Contact dated September 18, 2006, *located in* Appendix in Support of Brief in Support of Defendants' Motion for Summary Judgment ("Defendants' Appendix") at 00003-00008.

[17]     Supplemental Report at 4, 5, *located in* Plaintiff's Appendix at 005-006.

[18]     *Id.* at 8, *located in* Plaintiff's Appendix at 006.

[19]     Telephonic Affidavit of Donna Dew ("Dew Telephonic Affidavit") at 17, *located in* Defendants' Appendix at 00028.

[20]     Letter of Proposed Discharge from Sandra Brock to Elois Hanks of October 5, 2006, *located in* Plaintiff's Appendix at 027-029.

the VA on stated charges of insubordination, disrespectful conduct to a supervisor, and being disruptive in the workplace.[21]  Hanks was placed on administrative leave while a decision was made on the proposed termination.[22]  On November 6, 2006, the VA notified Hanks that it had decided to terminate her employment effective November 13, 2006.[23]  Hanks asked to be allowed to retire in lieu of being terminated and was allowed to do so.[24]  She retired from the VA on November 13, 2006.[25]

Hanks contends that her termination was precipitated not by the events of September 18 and 19, 2006 (hereinafter, collectively, "the September 2006 incidents") but rather by the EEO complaint she filed in December 2005.  On November 20, 2006, Hanks sought and received permission to amend her December 2005 EEO complaint to include allegations that the VA had constructively discharged her when it issued the notice of proposed termination in October 2006 and that this constructive discharge was in retaliation for her filing the December 2005 EEO

---

[21]     *Id.* at 027-028.

[22]     Letter from Betty Bolin Brown to Elois Hanks of October 5, 2006, *located in* Plaintiff's Appendix at 030.

[23]     Supplemental Report at 9, *located in* Plaintiff's Appendix at 007.

[24]     *Id.* at 3, *located in* Plaintiff's Appendix at 004.

[25]     *Id.* at 9, *located in* Plaintiff's Appendix at 007; Notification of Personnel Action of November 13, 2006, *located in* Defendants' Appendix at 00155.

complaint.[26]  The administrative proceeding on Hanks's complaint concluded in June 2008 with the issuance of a right-to-sue letter.[27]

Hanks commenced this action in September 2008.  She alleges that she was constructively discharged from her employment at the VA in retaliation for exercising her right to oppose discriminatory practices.[28]  She seeks actual damages, exemplary damages, reinstatement, and an injunction barring the defendants from engaging in unlawful employment practices.[29]

## B.  Procedural Background

The defendants have moved for summary judgment.  Summary judgment is proper when the pleadings, depositions, admissions, disclosure materials on file, and affidavits, if any, "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c)(2).[30]  A

---

[26]     Supplemental Report at 2, *located in* Plaintiff's Appendix at 003; Letter of Mellannise Henderson-Love to Charlotte Jones of November 20, 2006, at 1, *located in* Defendants' Appendix at 00157.

[27]     *See* Complaint ¶ 5.

[28]     *Id.* ¶ 14.

[29]     *Id.* ¶¶ 18-20.

[30]     The disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive."  *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986) (footnote omitted).

fact is material if the governing substantive law identifies it as having the potential to affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; see also *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) ("An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham.") (emphasis in original). To demonstrate genuine issues as to the material facts, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). The nonmoving party must show that the evidence is sufficient to support the resolution of the material factual issues in her favor. *Anderson*, 477 U.S. at 249.

When evaluating a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)). However, it is not incumbent upon the court to comb the record in search of evidence that creates a genuine issue as to a material fact. See *Malacara v. Garber,* 353 F.3d 393, 405 (5th Cir. 2003). The nonmoving party has a duty to designate the evidence in the record that establishes the existence genuine issues as to the material facts. *Celotex Corporation v. Catrett*, 477 U.S. 317, 324 (1986). "When evidence exists in the

summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara*, 353 F.3d at 405.

## II. ANALYSIS

### A. Hanks's Motion to Strike

The court concludes that Hanks's motion to strike must be denied. Hanks has moved to strike the defendants' motion, the brief in support thereof, and the appendix in support thereof. As to the defendants' motion and brief, Hanks contends that both should be stricken because the brief is longer than ten pages but does not include a table of contents or table of authorities and thus does not comply with Local Rule 7.2(d). *See* Motion to Strike at 1. However, striking the motion and the brief on the ground that they do not comply with Local Rule 7.2(d) would run afoul of Federal Rule of Civil Procedure 83.2. Local Rule 7.2(d) imposes a requirement of form on all briefs submitted in the Northern District of Texas. *See* N.D. TEX. LOC. R. 7.2(d) ("A brief in excess of 10 pages must contain: 1. a table of contents with page references; and 2. an alphabetically arranged table of cases, statutes, and other authorities cited, with page references to the location of all citations."). "A local rule imposing a requirement of form must not be enforced in a way that causes a party to lose any right because of a nonwillful failure to comply." FED. R. CIV. P. 83(a)(2). The defendants have a right to have their motion for summary judgment adjudicated

on the merits.  See *Brown v. Crawford County, Georgia*, 960 F.2d 1002, 1009 (11th Cir.

1992) ("Under Rule 56, a party *is entitled* to make a summary judgment motion

. . . .") (emphasis in original).  See generally *Amos v. Palmetto Government Benefit

Administrator*, 122 F. App'x. 105, 109 (5th Cir. 2005) (per curiam) ("[T]his circuit

has 'adopted a policy in favor of resolving cases on their merits . . . .") (quoting *Rogers

v. Hartford Life and Accident Insurance Company*, 167 F.3d 933, 936 (5th Cir. 1999));

*Waste Control Specialists, LLC v. Envirocare of Texas, Inc.*, 199 F.3d 781, 786 (5th Cir.)

(noting that resolving a case on a motion for summary judgment is a method of

resolving the case on its merits), *superseded in part on other grounds on rehearing by* 207

F.3d 225, *cert. denied*, 531 U.S. 956 (2000).

Rule 83(a)(2) thus bars the court from striking the defendants' motion for

summary judgment and brief in support thereof for the sole reason that the brief did

not contain the table of contents and table of authorities required by Local Rule

7.2(d).  Were the court to do so, it would be enforcing Local Rule 7.2(d) in a way

that would cause the defendants to lose their right to have the court adjudicate their

motion for summary judgment.  Hanks does not argue -- and nothing in the record

suggests -- that the defendants' failure to comply with Local Rule 7.2(d) was willful.[31]

_____

[31]     Counsel for the defendants has explained that she believed her fifteen-
page brief did not need a table of contents or a table of authorities because "[t]he first
five pages contain a list of facts upon which the brief is based" and she "did not count
the factual recitation in determining whether a table of contents and a table of
authorities was required."  Defendants' Response to Plaintiff's Motion to Strike

(continued...)

Therefore, the portion of Hanks's motion to strike that seeks to strike the defendants' motion for summary judgment and brief in support thereof must be denied.[32]

Next, Hanks advances two reasons that the appendix filed by the defendants in support of their motion for summary judgment should be stricken.  First, Hanks

---

(...continued)
Defendants' Motion for Summary Judgment, Brief, and Appendix in Support Thereof ("Response to Motion to Strike") (docket entry 27) at 2.  The court finds this explanation sufficient for purposes of determining whether the defendants' failure to comply with Local Rule 7.2(d) was willful.  However, for purposes of future filings, counsel for the defendants is advised to abide by Local Rule 7.2(c), which instructs that only the pages containing the table of contents and table of authorities may be excluded from the determination of a brief's length.  *See* N.D. TEX. LOC. R. 7.2(c).

[32]     What is more, Hanks has cited no statute, rule, or other authority that she claims empowers this court to strike the defendants' motion for summary judgment and brief in support thereof.  Federal Rule of Civil Procedure 12(f) grants the court discretion to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," but Rule 12(f) does not control here.  It "applies only to pleadings and has no applicability to motions made in pursuit of or in opposition to summary judgment."  *Pilgrim v. Trustees of Tufts College*, 118 F.3d 864, 868 (1st Cir. 1997), *abrogated in part on other grounds by National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101 (2002); see also *Trotter v. Jack Anderson Enterprises, Inc.*, 818 F.2d 431, 436 (5th Cir. 1987) (citing FED. R. CIV. P. 7(a) and *In re Zweibon*, 565 F.2d 742, 747 (D.C. Cir. 1977)); *Perea v. Hunter Douglas Window Fashions, Inc.*, 2008 WL 511409, at *5 n.3 (D. Colo. Feb. 22, 2008) ("Even assuming that a . . . brief falls within the definition of a 'pleading,' Rule 12(f) involves the striking of certain specified, objectionable 'matter' within such a pleading, not the wholesale striking of the pleading itself.").  It is true that included within a district court's "certain implied inherent powers that are necessary to the exercise of all others" is the power to fashion appropriate sanctions for a party's failure to comply with a local rule.  *Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 150 (4th Cir. 2009) (citations and internal quotation marks omitted).  But Hanks has not identified any authority that supports her contention that this court's power to fashion an appropriate sanction for a violation of a local rule extends to the draconian penalty of striking motions and briefs in their entirety.

contends pages 00161-00232 contain non-redacted personal information about her in violation of Federal Rule of Civil Procedure 5.2. Motion to Strike at 2. Second, Hanks contends that pages 00161-00232 have not been properly authenticated, contain "inadmissible hearsay," and contain "conclusory, self-serving statements that are inadmissible." *Id.* The court will address these arguments in turn.

First, the court concludes that the inclusion of non-redacted personal information on pages 00161-00232 of the appendix does not warrant the striking of the defendants' entire appendix.[33] Counsel for Hanks notified counsel for the defendants that certain pages of the appendix had not been properly redacted on the first business day after the appendix was filed. *See* Response to Motion to Strike, Exhibit 1, E-mail from Mellannise Henderson-Love to Angie Henson of March 1, 2010. Counsel for the defendants promptly notified the district clerk, who sealed the appendix from public view within hours. Response to Motion to Strike at 3-4. Hanks asserts "that the harm that FRCP 5.2 was designed to protect had already been done" by the time the district clerk sealed the appendix. Motion to Strike at 2 n.1. However, Hanks does not substantiate this assertion. In light of the very short

---

[33] Once again Hanks has not pointed the court to any authority in support of the sanction she requests. Rule 12(f) does not empower the court to strike materials from a party's appendix. See *Shah v. Chertoff*, 2007 WL 2948362, at *5 (N.D. Tex. Oct. 10, 2007) (Ramirez, M.J.) (collecting cases); see also *WWP, Inc. v. Wounded Warriors, Inc.*, 2008 WL 150234, at *1 (D. Neb. Jan. 14, 2008) (citing *National Union Fire Insurance Company of Pittsburgh, Pa. v. Hicks, Muse, Tate & Furst, Inc.*, 2002 WL 1482625 (S.D.N.Y. July 10, 2002)).

time during which pages 00161-00232 were available for public view, the court

declines to impose the sanction of striking the defendants' appendix from the record.

Accord *Barclay v. Pawlak*, 2009 WL 4609768, at *2 (D. Conn. Dec. 4, 2009)

(declining to impose any sanction on defendants who filed non-redacted documents

in violation of Rule 5.2 where the violation was inadvertent and the defendants filed

properly redacted documents within one business day of being notified of their error).

Instead, the court admonishes counsel for the defendants to take care that her future

filings comply with Rule 5.2(a).

Second, the court concludes that Hanks's evidentiary objections to pages

00161-00232 do not require the court to strike those pages. Ruling on the

defendants' motion for summary judgment does not require the court to rely on any

of the information contained in pages 00161-00232 of the defendants' appendix.

Therefore, the court denies this portion of Hanks's motion to strike as moot. Accord,

*e.g.*, *Merrill Lynch, Pierce, Fenner & Smith, P.C. v. Greystone Servicing Corporation, Inc.*,

2009 WL 2568323, at *12 (N.D. Tex. Aug. 18, 2009) (Solis, J.).

## B. The Defendants' Motion for Summary Judgment

The court concludes that the defendants are entitled to judgment as a matter

of law on Hanks's retaliation claim. Title VII retaliation cases are governed by the

three-step *McDonnell Douglas* burden-shifting framework. *Byers v. Dallas Morning

News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000). Step one of that framework places the

initial burden of production on the plaintiff, who must make out a *prima facie* case of retaliation. *LeMaire v. Louisiana Department of Transportation and Development*, 480 F.3d 383, 388 (5th Cir. 2007). To make out a *prima facie* case of retaliation, a plaintiff must show: "(1) that she engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action." *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002) (citation, internal quotation marks, and brackets omitted). If the plaintiff successfully makes out a *prima facie* case, step two of the *McDonnell Douglas* framework shifts the burden of production to the employer, who must articulate a legitimate, non-retaliatory reason for the adverse employment action. *LeMaire*, 480 F.3d at 388. If the employer carries that burden, *McDonnell Douglas* step three shifts the burden of production back to the plaintiff, who then must show "'either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected [activity] (mixed-motives alternative).'" *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005) (quoting *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)) (brackets omitted). If the plaintiff relies on the mixed-motives alternative, the defendant has the opportunity to present as an affirmative defense evidence that the employer would have undertaken the adverse employment action even in the absence

of the prohibited consideration. See *Smith v. Xerox Corporation*, 602 F.3d 320, 333

n.50 (5th Cir. 2010). On a motion for summary judgment, the plaintiff must

produce evidence sufficient to create genuine issues of material fact as to the first and

third steps of the *McDonnell Douglas* analysis. See *Gee*, 289 F.3d at 345.

### 1. *McDonnell Douglas Step One*

Turning to the first step of the *McDonnell Douglas* analysis, the court concludes

that Hanks has raised a genuine issue of fact as to only two of the three elements

necessary to make out a *prima facie* case of retaliation. Hanks engaged in a protected

activity when she filed an EEO complaint in December 2005. See, *e.g.*, *Arizpe v.

Widnall*, 62 F.3d 391 (tbl.), 1995 WL 449729, at *3 (5th Cir. June 26, 1995) (per

curiam). An adverse employment action occurred when Hanks was put to the

decision of either retiring or being terminated. See *supra* note 2. However, Hanks

has introduced no evidence to establish the existence of a causal link between her

filing of an EEO complaint and her later termination.

To establish the causal link necessary to make out a *prima facie* case of

retaliation, a plaintiff must produce evidence that "'demonstrates that the employer's

decision to terminate was [based] in part on knowledge of the employee's protected

activity.'" *Ackel v. National Communications, Inc.*, 339 F.3d 376, 386 (5th Cir. 2003)

(quoting *Medina v. Ramsey Steel Company*, 238 F.3d 674, 684 (5th Cir. 2001)). As

such, "'[t]he standard for establishing the "causal link" element of the plaintiff's

prima facie case [of retaliation] is much less stringent than the "but for" test.'" *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) (quoting *Long v. Eastfield College*, 88 F.3d 300, 305 n.4 (5th Cir. 1996)) (brackets omitted).  For example, "[c]lose timing between an employee's protected activity and an adverse action against [her] may provide the 'causal connection' required to make out a *prima facie* case of retaliation."  *Swanson v. General Services Administration*, 110 F.3d 1180, 1188 (5th Cir.), *cert. denied*, 522 U.S. 948 (1997).

The test at the *prima facie* stage may not be particularly stringent, but the plaintiff nonetheless "must produce *some* evidence of a causal link."  *Ackel*, 339 F.3d at 385 (emphasis in original).  A plaintiff who relies on nothing more than her subjective belief that she was the victim of retaliation cannot establish a *prima facie* causal link.  *Peace v. Harvey*, 207 F. App'x 366, 369 (5th Cir. 2006) (per curiam) (citing *Byers*, 209 F.3d at 427).  And if the only evidence of a *prima facie* causal link is "mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action," then "the temporal proximity must be very close." *Clark County School District v. Breeden*, 532 U.S. 268, 273-74 (2001) (per curiam) (citations and internal quotation marks omitted) (citing with approval cases holding that three and four-month gaps between an employer's knowledge of a protected activity and an adverse employment action are too long, standing alone, to establish a *prima facie* causal link).  In addition, a plaintiff who relies on close "temporal

proximity between the protected activity and the adverse employment action" must

produce "evidence of knowledge of the protected activity on the part of the decision

maker." *Ramirez v. Gonzalez*, 225 F. App'x 203, 210 (5th Cir. 2007) (per curiam)

(citing *Swanson*, 110 F.3d at 1188).

In this case, Hanks has failed to produce any evidence establishing a *prima facie*

causal link between her filing of an EEO complaint against Dew in December 2005

and her termination in November 2006. Hanks points to seventeen pieces of

evidence that she claims are sufficient to establish that Dew's decision[34] to

---

[34] The general rule in Title VII retaliation cases is that "in determining whether an adverse employment action was taken as a result of retaliation, our focus is on the final decisionmaker. The statements and actions of ordinary employees are normally not imputable to the employer." *Gee*, 289 F.3d at 346 (citing *Long v. Eastfield College*, 88 F.3d 300, 306-07 (5th Cir. 1996)) (internal citations omitted). However, there is an exception to this general rule for cases in which the final decision maker "did not conduct his own independent investigation, and instead merely 'rubber stamped' the recommendations" of an ordinary employee. *Long*, 88 F.3d at 307; see also *Gee*, 289 F.3d at 346 ("[W]hen the person conducting the final review serves as the 'cat's paw' of those who were acting from retaliatory motives, the causal link between the protected activity and adverse employment action remains intact."). "'[T]he degree to which the final decision maker's decisions were based on his own independent investigation is a question of fact . . . .'" *Gee*, 289 F.3d at 346 (quoting *Long*, 88 F.3d at 307) (brackets omitted).

In this case, the person who made the final decision to terminate Hanks was Betty Bolin Brown ("Brown"), the director of the VA facility where Hanks was employed. *See* Transcript of Hearing Before Equal Employment Opportunity Commission Administrative Law Judge Evelyn Maiben ("EEOC Transcript") at 182, *located in* Defendants' Appendix at 00081; *see also* Letter from Betty Bolin Brown to Elois Hanks of October 5, 2006, *located in* Plaintiff's Appendix at 030. In light of this fact, Hanks has attempted to invoke the so-called cat's paw exception by offering evidence that Dew influenced Brown's decision to terminate Hanks. See, *e.g.*, EEOC Transcript at 182, *located in* Defendants' Appendix at 00081. In doing so, however,

(continued...)

recommend that Hanks be terminated was motivated by retaliation. However, none of Hanks's evidence is sufficient to create a genuine issue of fact on this point.

First, Hanks designates three pieces of evidence that, viewed in the light most favorable to Hanks, establish that she made both informal and formal complaints about Dew.[35] This evidence establishes that Hanks engaged in a protected activity. See, *e.g.*, *Arizpe*, 1995 WL 449729, at *3; see also *Long*, 88 F.3d at 306 n.5 (noting that the language in Title VII's anti-retaliation provision protecting an employee who "'opposed any practice made an unlawful employment practice' is broad enough to include using the employer's internal grievance mechanisms") (citation, internal quotation marks, and ellipsis omitted). However, the mere fact that Hanks filed complaints against Dew is not, of its own force, evidence that Dew later retaliated against Hanks for filing those complaints. See *Manning v. Chevron Chemical Company, LLC*, 332 F.3d 874, 883 n.6 (5th Cir. 2003) ("If the decisionmakers were completely

---

(...continued)
Hanks only begs the decisive question. Even if the court assumes for the sake of argument that Brown served as the cat's paw of Dew, that fact is only material to Hanks's retaliation claim if Dew was acting from retaliatory motives. See *Gee*, 289 F.3d at 346. As discussed below, Hanks has not offered any evidence showing that Dew made the decision to recommend Hanks's termination in retaliation for Hanks's December 2005 EEO complaint. Therefore, the court need not -- and does not -- decide whether Brown conducted her own independent investigation or merely rubber stamped Dew's recommendation that Hanks should be terminated.

[35]     *See* Plaintiff, Elois Hanks' Response Brief in Opposition to Defendant's Motion for Summary Judgment ("Response Brief") at 5-6 ¶¶ 7-9 and evidence cited therein; *id.* at 14-15 and evidence cited therein; *see also* evidence cited *supra* notes 6, 9.

unaware of the plaintiff's protected activity, then it could not be said (even as an initial matter) that the decisionmakers might have been retaliating against the plaintiff for having engaged in that activity."), *cert. denied*, 540 U.S. 1107 (2004).

Second, Hanks designates two pieces of evidence to the effect that she requested time off work because she suffered from Carpal Tunnel Syndrome.[36]  But that fact is not material to Hanks's claim that she was retaliated against in violation of Title VII.  See *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) ("Title VII does not proscribe discrimination on the basis of disability.").

Third, Hanks designates four pieces of evidence that establish the basic time line of events that led to her withdrawal:[37]  the occurrence of the September 2006 incidents; the VA's October 5, 2006 proposal of discharge and placement of Hanks on administrative leave; and Hanks's November 13, 2006 decision to retire in lieu of being terminated.  Some of this evidence shows that Hanks suffered an adverse employment action, see *supra* note 2, but none of it offers any support for Hanks's claim that Dew recommended that Hanks be terminated because of a retaliatory motive or animus.  To the contrary -- this evidence tends to support the defendants' claim that they had a legitimate, non-retaliatory reason for Dew's termination.

---

[36]    *See* Response Brief at 6 ¶¶ 13-14 and evidence cited therein; *id.* at 15 and evidence cited therein.

[37]    See *id.* at 7-8 ¶¶ 19-24, 27-28 and evidence cited therein; *id.* at 16 and evidence cited therein; *see also* evidence cited *supra* notes 14-25.

Finally, Hanks designates eight pieces of evidence that track the progression of her internal EEO complaint.[38]  Taken together, this evidence establishes that Hanks's EEO complaint was formally investigated by the ORM, that Dew was aware that Hanks had filed a complaint, that Dew participated in the ongoing investigation, and that on August 9, 2006, Hanks elected an EEOC hearing on her complaint.  Hanks has thus adduced evidence that tends to demonstrate that Dew had knowledge that Hanks was engaged in protected activity.  But that is all it tends to show, and that is not enough.  The law requires Hanks to adduce evidence that Dew's decision to terminate her was *based on* her knowledge that Hanks was engaged in protected activity.  See *Ackel*, 339 F.3d at 386.  This Hanks has failed to do.[39]

_____

[38]    *See* Response Brief at 6-8 ¶¶ 10-12, 15-18, 25 and evidence cited therein; *id.* at 15-16 and evidence cited therein.

[39]    A pair of Fifth Circuit cases could be read to endorse the proposition that an employee can make out a *prima facie* causal link simply by producing evidence that her employer had knowledge or awareness that the employee had engaged in a protected activity.  See *Medina v. Ramsey Steel Company, Inc.*, 238 F.3d 674, 684 (5th Cir. 2001); *Long*, 88 F.3d at 306.  However, neither case adopts that proposition as a holding, see *Shannon v. Henderson*, 275 F.3d 42 (tbl.), 2001 WL 1223633, at *4 n.7 (5th Cir. Sept. 25, 2001) (per curiam) (characterizing the language in *Medina* "that an employer's awareness of an employee's protected activity might be sufficient to establish the 'causal link' element of a prima facie case of retaliation" as an "implication"), and the circuit has rejected this view in at least two unpublished decisions, see *Knights v. Bank United of Texas Federal Savings Bank*, 192 F.3d 127 (tbl.), 1999 WL 684160, at *6 (5th Cir. Aug. 13, 1999) ("Mere knowledge of possible protected activity is not enough to rase a fact issue on the necessary causal link for a retaliation claim."); *Houston v. EBI Companies*, 53 F.3d 1281 (tbl.), 1995 WL 295897, at *5 (5th Cir. Apr. 21, 1995) (per curiam) ("An employer's knowledge of a plaintiff's participation in a protected activity, without more, is insufficient to show a *causal*

(continued...)

Nor does the temporal proximity between Hanks's filing of an EEO complaint and her termination establish a *prima facie* causal link between the two events. Dew became aware that Hanks had filed an EEO complaint against her on December 5, 1995.[40] Dew recommended that Hanks be terminated on October 5, 1996. In the absence of any other evidence of retaliation, ten months is too long for temporal proximity to form the basis of a *prima facie* causal link. See, *e.g.*, *Ajao v. Bed Bath and Beyond, Inc.*, 265 F. App'x 258, 265 (5th Cir. 2008) (per curiam) ("[T]emporal proximity of four months is not close enough, without additional supporting summary-judgment evidence, to establish a causal connection between the

_____

(...continued)
*connection* between the plaintiff's participation in the activity and the adverse employment action.") (emphasis in original), *cert. denied sub nom., Houston v. All Saints Health System, Inc.*, 516 U.S. 943 (1995); see also *Shannon*, 2001 WL 1223633, at *4 n.7 (criticizing the "implication of *Medina*" that mere knowledge is sufficient as "contrary to the holdings of other circuits"); *Knights*, 1999 WL 684160, at *6 (5th Cir. Aug. 13, 1999) (noting that *Long* also turned on the close temporal proximity between the plaintiffs' protected activity and the termination of their employment). Therefore, this court joins the other district courts within this circuit that have concluded that the bare fact that an employer knew that an employee had engaged in protected activity cannot, without more, establish the casual link required for a *prima facie* case of retaliation. Accord *Hutto v. University of Houston System*, 2008 WL 4453427, at *7 (S.D. Tex. Sept. 28, 2008) ("Mere knowledge . . . is not sufficient, by itself, to establish a prima facie case for retaliation.") (citation and internal quotation marks omitted); *Macias v. Chertoff*, 2008 WL 559712, at *4 (W.D. Tex. Jan. 8, 2008) (concluding that "mere knowledge of protected activity," when combined with a lack of temporal proximity between the employer becoming aware of the plaintiff's protected activity and an adverse employment action, "is insufficient evidence to establish a [*prima facie*] causal connection").

[40]     *See* E-mail of December 5, 2005 from Cindy Bukoswky to Donna Dew at 1, *located in* Plaintiff's Appendix at 057.

employment action and the protected conduct."); *Raggs v. Mississippi Power & Light Company*, 278 F.3d 463, 471-72 (5th Cir. 2002) (rejecting a five-month gap as insufficiently proximate in time); see also *DeHart v. Baker Hughes Oilfield Operations, Inc.*, 214 F. App'x 437, 443 (5th Cir. 2007) (per curiam) (collecting cases).

Hanks comes closest to raising a genuine issue of fact on the existence of a *prima facie* causal link between her EEO complaint and her termination when she points out that the decision to terminate her "came just five weeks," Response Brief at 16, after she elected to have a hearing on her EEO complaint before an EEOC administrative law judge ("ALJ"), which was the last event in the prosecution and investigation of her EEO complaint that took place before her employment was terminated.[41]  However, there are two reasons why this argument, too, falls short of

_____

[41]  In actuality, the decision to terminate Hanks was made eight weeks after the last activity in the prosecution and investigation of her EEO complaint.  Hanks elected a hearing before an ALJ on August 9, 2006, while the letter proposing termination is dated October 5, 2006.  *See* Supplemental Report at 1, *located in* Plaintiff's Appendix at 002; Letter of Proposed Discharge from Sandra Brock to Elois Hanks of October 5, 2006, *located in* Plaintiff's Appendix at 027-029.

Hanks does claim in her brief that "[a]t the time of Plaintiff's proposed discharge, her claims of discrimination [were] being presented to an Administration Judge for hearing."  Response Brief at 8 ¶ 26.  But this claim cannot be reconciled with her later claim that "[t]he last incident surrounding Plaintiff's EEO complaint came just five weeks before her termination," *id.* at 16.  After reviewing the record, the court concludes that Hanks has not offered any evidence to support her claim that a hearing on her EEO complaint was under way at the time of her termination.  To the contrary, the portion of the record she cites on this point establishes that, at the time of her termination, her complaint was still "at the investigational stage."  Hanks Deposition at 35, *located in* Plaintiff's Appendix at 110.  In addition, the defendants have offered evidence, which Hanks does not dispute, that a hearing on

(continued...)

- 22 -

establishing a *prima facie* causal link.  First, Hanks does not even argue -- much less produce any evidence -- that Dew was aware of Hanks's decision to elect a hearing before an ALJ at the time when Dew decided to recommend that Hanks be terminated.  "'If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct.'"  *Ackel*, 339 F.3d at 386 (quoting *Chaney v. New Orleans Public Facility Management, Inc.*, 179 F.3d 164, 168 (5th Cir. 1999), *cert. denied*, 529 U.S. 1027 (2000)).

Second, Hanks's argument proceeds from a faulty premise of law.  Hanks has undertaken a temporal-proximity analysis by measuring the amount of time that elapsed between the adverse employment action and the *last* instance of her engaging in protected activity.  But the date to which the adverse employment decision must be temporally proximate is the date on which the defendants *first* gained knowledge of her protected activity.  See *Mitchell v. Snow*, 326 F. App'x 852, 856 n.6 (5th Cir. 2009) (concluding that the initial filing of a complaint "appears to be the relevant starting point" for the inquiry into temporal proximity) (citing *Strong v. University Healthcare System, L.L.C.*, 482 F.3d 802, 807 (5th Cir. 2007)).[42]  Hanks's reading of

---

[41](...continued)
Hanks's complaint did not take place until April 2008.  *See* EEOC Transcript at 1, *located in* Defendants' Appendix at 00072.

[42]     See also *Crawford v. Metropolitan Government*, __ U.S. __, 129 S. Ct. 846,
(continued...)

the law would allow an employee to restart the temporal-proximity clock simply by

notifying her employer every time she did anything to prosecute her EEO complaint.

The Fifth Circuit has considered and rejected this view:

> [T]he mere fact that some adverse action is taken *after* an employee engages in some protected activity will not *always* be enough for a *prima facie* case.  Between June 1990 and May 1992, for example, Swanson filed four EEO complaints, issued various grievances and memorandums complaining of discriminatory actions, and participated in an EEO hearing and numerous meetings with his lawyer.  If timing *alone* were enough, any adverse action taken against Swanson after June 1990, no matter how justified, could be sustained as discriminatory.  Title VII's protection against retaliation does not permit EEO complainants to disregard work rules or job requirements.

*Swanson*, 110 F.3d at 1188 n.3 (emphasis in original).

---

[42](...continued)
855 (2009) (Alito, J., concurring in the judgment) ("[A]n employee claiming retaliation may be able to establish causation simply by showing that, within some time period prior to the adverse action, the employer . . . *became* aware of the views that the employee had expressed." (emphasis added)); *Breeden*, 532 U.S. at 273 (describing the relevant measure of temporal proximity as the time "between an employer's knowledge of protected activity and an adverse employment action"); *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 41 (5th Cir. 1992) (analyzing the significance of a fourteen-month term of temporal proximity where an employee filed her initial complaint fourteen months prior to being terminated but the investigation and prosecution of that complaint continued until two months prior to her termination).  Accord *Farley v. Nationwide Mutual Insurance Company*, 197 F.3d 1322, 1337 (11th Cir. 1999) (holding that a plaintiff can establish a *prima facie* causal link "if he provides sufficient evidence that the decision-maker *became aware* of the protected conduct, and that there was close temporal proximity between this awareness and the adverse employment action") (emphasis added).

Finally, Hanks is mistaken when she argues that the Fifth Circuit's decisions in *Gee*, 289 F.3d 342, and *Long*, 88 F.3d 300, demonstrate that she has proven a *prima facie* causal link.  *See* Response Brief at 11.  The primary point of law for which Hanks cites these cases is the rule that the retaliatory motives of a supervisor can sometimes be imputed to an ultimate decision maker.  See *id.* at 11-12.  But as the court has already noted, see *supra* note 34, that rule is of no help to Hanks if she cannot also establish its factual predicate -- *i.e.*, that Dew acted with retaliatory motives.  In both *Long* and *Gee*, the plaintiffs had provided affidavits and other summary-judgment evidence that established their supervisors' retaliatory motives.  See *Gee*, 289 F.3d at 347; *Long*, 88 F.3d at 305.  Hanks has offered no such evidence.  Because Hanks has failed to establish a *prima facie* causal link between her filing of an EEO complaint and Dew's decision ten months later to recommend that Hanks's employment at the VA be terminated, the defendants are entitled to summary judgment on Hanks's retaliation claim.  See generally *Celotex*, 477 U.S. at 323 (concluding that a "complete failure of proof concerning an essential element of the nonmoving party's case" entitles the moving party to judgment as a matter of law).

### 2.  *McDonnell Douglas Step Three*

Even if the court were to conclude that Hanks had made out a *prima facie* case of retaliation, the defendants would be entitled to judgment as a matter of law for an additional, wholly independent reason.  The defendants have carried their burden of

articulating a legitimate, non-retaliatory reason for the termination by producing evidence that Hanks was terminated because of her disruptive conduct during the September 2006 incidents. See, *e.g.*, *Malouse v. Winter*, 338 F. App'x 356, 359 (5th Cir. 2009) (per curiam) (confirming that instances of misconduct by an employee can be a legitimate, non-retaliatory reason for an employer to discharge the employee).

Hanks contends that the defendants' decision to terminate her was in fact driven by mixed motives. *See* Response Brief at 14. However, Hanks has failed to produce any evidence that, if true, would establish that her filing of an EEO complaint against Dew was a motivating factor in the defendants' decision to terminate her employment.[43]

_____

[43] As discussed above, the third step in the *McDonnell Douglas* burden-shifting analysis requires the plaintiff to prove either pretext (*i.e.*, that the defendants' stated non-retaliatory reason for the termination was false) or mixed motives (*i.e.*, that the defendants terminated the plaintiff both for the stated reason and for an additional, retaliatory reason). See *Keelan*, 407 F.3d at 341. Prior to the Supreme Court's decision in *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), the law in this circuit was that a plaintiff could rely on a mixed-motives theory only if the plaintiff had direct evidence of retaliatory motive. See *Smith*, 602 F.3d at 327. A plaintiff who had only circumstantial evidence of retaliation was required to prove pretext. *Id.* The Supreme Court held in *Desert Palace* that a mixed-motives theory is also available to a Title VII plaintiff who presents only circumstantial evidence of discrimination, 539 U.S. at 92, and the Fifth Circuit recently extended that holding to Title VII retaliation plaintiffs, *Smith*, 602 F.3d at 332.

The Fifth Circuit has yet to address the question of whether a mixed-motives plaintiff can use a different kind, amount, or quality of circumstantial evidence to survive *McDonnell Douglas* step three than a pretext plaintiff can use. On one hand, the Fifth Circuit has implied that the burden on the plaintiff at *McDonnell Douglas* step three is lighter in a mixed-motives case. See *Smith*, 602 F.3d at 333 ("[T]he defendant will always prefer a pretext submission . . . while the plaintiff will

(continued...)

always prefer a mixed-motive submission . . . ."); see also *Grubb v. Southwest Airlines*, 296 F. App'x 383, 389 (5th Cir. 2008) (per curiam) (characterizing the "sole motive test of *McDonnell Douglas*" as "more restrictive"), *cert. denied*, __ U.S. __, 129 S. Ct. 1986 (2009). On the other hand, the circuit has suggested in dicta that the plaintiff's burden is substantially the same under either theory. See *Roberson v. Alltell Information Services*, 373 F.3d 647, 652 (5th Cir. 2004) ("'[I]t is not particularly significant whether the plaintiff relies on . . . direct or circumstantial evidence of discriminatory intent' because 'under either approach, the plaintiff must produce some evidence suggesting that the employer's failure to promote him was due in part or whole to discriminatory intent, and so must counter the employer's legitimate, non-discriminatory reason.'") (quoting *McGinest v. GTE Service Corporation*, 360 F.3d 1103, 1123 (9th Cir. 2004)) (brackets omitted).

If it is indeed the case that "now that the direct evidence requirement no longer exists, proving pretext" is "more difficult than proving mixed motives," Henry L. Chambers, Jr., *The Effect of Eliminating Distinctions Among Title VII Disparate Treatment Cases*, 57 SMU L. REV. 83, 99 (2004) (footnote omitted), then it is conceivable that a plaintiff whose circumstantial pretext claim would not survive summary judgment could nonetheless make out a circumstantial mixed-motives claim that would. However, the rule that a mixed-motives plaintiff can present circumstantial evidence of retaliatory intent is of such a recent vintage that there is not yet any case law addressing the question of what kind of circumstantial evidence such a plaintiff must produce. Put differently, if a mixed-motives plaintiff shoulders a lesser burden at *McDonnell Douglas* step three than a pretext plaintiff shoulders, then it seems that precedents in which a pretext plaintiff was held to have presented insufficient circumstantial evidence of retaliatory intent should not necessarily be controlling in mixed-motives cases that turn on the same question.

Even so, it appears that the Fifth Circuit is willing to import precedents from the former context into the latter. In a recent, unpublished Title VII discrimination case, the circuit concluded that an evidentiary standard developed in pretext cases should apply in mixed-motives cases because the rationale for that standard was "equally applicable in both contexts." *Taylor v. Peerless Industries, Inc.*, 322 F. App'x 355, 366 n.6 (5th Cir. 2009) (per curiam). And in a recent, unpublished Title VII retaliation case, the Fifth Circuit utilized, without comment, a rule developed in the pretext context to decide a mixed-motives case. See *Grubb*, 296 F. App'x at 390 (citing *Moore v. Eli Lilly & Company*, 990 F.2d 812, 819 (5th Cir. 1993), a pretext case, in support of the conclusion that a plaintiff had failed "to create a genuine issue of fact as to discriminatory motives" in a mixed-motives case);

(continued...)

The standard for establishing causation here is more stringent than it is at the *prima facie* case. *Medina*, 238 F.3d at 685; see also *Long,* 88 F.3d at 305 n.4. "[O]nce the employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive.'" *McCoy v. City of Shreveport*, 492 F.3d 551, 562 (5th Cir. 2007) (per curiam) (quoting *Swanson*, 110 F.3d at 1188). That evidence can take various forms. For example, proof that the legitimate, non-retaliatory reason offered by the defendant is false or unworthy of credence is one form of circumstantial evidence that can establish a retaliatory motive. *Johnson v. TCB Construction Company, Inc.*, 334 F. App'x 666, 672 (5th Cir. 2009) (per curiam) (citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000)). So too is evidence of disparate treatment -- that is to say, evidence that compares the plaintiff's treatment to the treatment of "'nearly identical, similarly situated individuals'" who had not filed discrimination complaints and establishes that "the

---

(...continued)
see also *Smith v. Xerox Corporation*, 584 F. Supp. 2d 905, 915 (N.D. Tex. 2008) (Godbey, J.) (citing *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000), a pretext case, to resolve a sufficiency-of-the-evidence challenge to a jury's finding of causation in a mixed-motives case), *aff'd*, 602 F.3d 320 (5th Cir. 2010). Therefore, the court's analysis under step three of the *McDonnell Douglas* framework will proceed from the assumption that case law addressing what kind of circumstantial evidence is sufficient to prove retaliatory intent in a pretext case can be used to answer the same question in a mixed-motives case.

employer gave preferential treatment" to those individuals. *Moore v. Reeves County*, 360 F. App'x 546, 548 (5th Cir. 2010) (per curiam) (quoting *Bryant v. Compass Group USA, Inc.*, 413 F.3d 471, 478 (5th Cir. 2005), *cert. denied*, 546 U.S. 1090 (2006)). Similarly, evidence that an employer's treatment of the plaintiff did not comport with the employer's internal disciplinary policy can be evidence of a retaliatory motive. See *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 354 n.29 (5th Cir. 2005). Retaliatory motive also can be inferred from evidence that an employer harassed an employee about having filed an EEO complaint or frequently made disparaging comments about the complaint. See, *e.g.*, *Shirley*, 970 F.2d at 43.

In this case, the only evidence that Hanks offers to establish that her termination was motivated by retaliation is the same evidence, recounted above, with which she attempt to establish a *prima facie* causal link between her EEO complaint and her termination. The court has already concluded that Hanks's evidence is insufficient to establish a *prima facie* case of retaliation. *A fortiori*, it is also insufficient to establish that Hanks's termination was motivated by retaliation. See *Stingley v. Den-Mar Inc.*, 347 F. App'x 14, 20 (5th Cir. 2009) (per curiam) ("[A]lthough temporal proximity can establish a prima facie case of retaliation, it cannot -- standing alone -- rebut an employer's legitimate, nondiscriminatory reason for the employment action.") (citing *Strong*, 482 F.3d at 808), *cert. denied*, ___ U.S. ___, 130 S. Ct. 1888 (2010); *Shannon*, 2001 WL 1223633, at *4 ("[O]nce the employer has offered a

nondiscriminatory reason for the adverse action, additional evidence beyond mere knowledge is necessary to demonstrate that the employer's proffered reason for the action is pretextual."); see also *Malouse*, 338 F. App'x at 359 (noting that a plaintiff's "subjective belief of . . . retaliatory motive is insufficient" to demonstrate pretext or "discriminatory intent") (citing *Septimus v. University of Houston*, 399 F.3d 601, 611 (5th Cir. 2005) and *Byers*, 209 F. 3d at 427)); *Roberson*, 373 F.3d at 656 (affirming a grant of summary judgment in favor of an employer where the plaintiff attempted to rebut the employer's legitimate, nondiscriminatory reason for a termination "[w]ithout more than timing allegations"); *Musgrove v. Mobil Oil Corporation*, 2003 WL 21653125, at *11 (N.D. Tex. Apr. 1, 2003) (Solis, J.) ("[W]ithout more, mere knowledge that an employee has filed EEOC charges is insufficient to raise a question of fact concerning intent to retaliate.").

There is simply no evidence anywhere in record that suggests that Dew decided to terminate Hanks in retaliation for Hanks filing an EEO complaint against Dew. Hanks has offered no evidence to suggest that the defendants' explanation of why they fired her is not worthy of credence or that other employees behaved similarly but were not terminated. Undisputed evidence shows that Dew's decision to recommend that Hanks be terminated was consistent with the defendants' disciplinary policy.[44]

---

[44]      *See* VA Handbook 5021 Part II Appendix A, *located in* Plaintiffs' Appendix at 052; EEOC Transcript at 177-181, *located in* Defendants' Appendix at 00076-00080.

Hanks protests that termination was at the upper end of the permissible range of penalties, but she does not argue that Dew disregarded the VA's disciplinary policy or that the policy did not authorize Dew to recommend Hanks's termination. And there is no evidence that Dew ever made negative or disparaging comments about Hanks's EEO complaint. As a result, Hanks has not shown either that the defendants' stated non-retaliatory reason for terminating her was a pretext or that the defendants terminated her for both retaliatory and non-retaliatory reasons. Because Hanks has failed to carry her burden under step three of the *McDonnell Douglas* framework, the defendants are entitled to judgment as a matter of law on her retaliation claim.

### III.  CONCLUSION

For the reasons discussed above, Hanks's motion to strike is **DENIED**, and the defendants' motion for summary judgment is **GRANTED**.

**SO ORDERED**.

July 28, 2010.

**A. JOE FISH**
**Senior United States District Judge**